**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| JOHN S. CLARK, individually and as trustee of the John S. and Loretta J. Clark Trust, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | |
| NATIONAL EQUITIES HOLDINGS, INC., a Delaware corporation, BILLY M. KNOLLENBERG, DORIS A. KNOLLENBERG, DONALD DOUGLAS a/k/a Donnie Douglas, CHERYL WALKER DOUGLAS, VIRGIN AMERICA ENERGY, INC., a Texas corporation, M P C C, INC., a Texas corporation, CADDO CREEK PRODUCTION, INC., a Texas corporation, LOCKOUT CORPORATION, a Texas corporation, ELVIS CLINT MCBAY, LYLE J. BRANDON, and LANA ROBERTS BRANDON, | § § § § § § § § § § § § § § § § § § | Case No. 4:05-CV-290 |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS TO DISMISS**</u>

The following are pending before the court:

1.     Defendants Lockout Corporation and Elvis Clint McBay's motion to dismiss (docket entry #9);

2.     Defendants National Equities Holdings, Inc., Billy M. Knollenberg, Doris A. Knollenberg, Virgin America Energy, Inc. and M P C C, Inc.'s motion to dismiss pursuant to FRCP Rule 12 and the abstention doctrine (docket entry #41);

3.     Plaintiff's memorandum in opposition to motion to dismiss (docket entry #43);

4.     Plaintiff's memorandum in opposition to motion to dismiss (docket entry #46);

5.     Defendants Lockout Corporation and Clint McBay's supplemental motion to dismiss and brief in support thereof (docket entry #48);

6.     Plaintiff John S. Clark's RICO case statement (docket entry #79);

7.     Plaintiff's supplement to RICO case statement (docket entry #84);

8.     Defendants National Equities Holdings, Inc., Billy M. Knollenberg, Doris A. Knollenberg, Virgin America Energy, Inc. and M P C C, Inc.'s response to RICO case statement (docket entry #96);

9.     Defendants Lockout Corporation and Clint McBay's response to John S. Clark's RICO case statement (docket entry #98);

10.    Plaintiff's reply to responses to John S. Clark's RICO case statement (docket entry #99);

11.    Defendants National Equities Holdings, Inc., Billy M. Knollenberg, Doris A. Knollenberg, Virgin America Energy, Inc. and M P C C, Inc.'s additional response to reply to responses to John S. Clark's RICO case statement (docket entry #103); and

12.    Defendants Lockout Corporation and Clint McBay's objection and sur-reply to John S. Clark's reply to responses to RICO case statement (docket entry #104).

Having considered the Defendants' motions to dismiss, the Plaintiff's responses as well as the Plaintiff's RICO case statement, the supplemental case statement and the responses thereto, the court finds that the motions to dismiss should be granted.

## ORDER STRIKING DOCKET ENTRY NOS. 99, 103 AND 104

On October 11, 2005, the Plaintiff filed his "Reply to Responses to John S. Clark's RICO Case Statement" (docket entry #99). The Plaintiff's reply is 39 pages. Pursuant to Local Rule CV-7(a)(1), "[a]ny reply brief to an opposed dispositive motion . . . shall not exceed ten pages, including attachments." Local Rule CV-7(a)(1). The Plaintiff's reply exceeds the page limitation by 29 pages.

The Plaintiff did not seek leave of court to file the reply brief in excess of the page limitation; accordingly, the court is not inclined to consider the reply and hereby strikes the same.  Since the Plaintiff's reply is no longer a live pleading, the court concludes that the Defendants' sur-replies (docket entry #'s 103 and 104) in response to the Plaintiff's reply should be stricken as well.

## LEGAL STANDARD

District courts may dismiss a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A district court should grant a motion to dismiss under Rule 12(b)(6) in two situations.  First, "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," dismissal is proper.  *Scanlan v. Texas A & M University*, 343 F.3d 533, 536 (5th Cir. 2003).  Second, "if the allegations, accepted as true, do not present a claim upon which relief legally can be obtained," dismissal is also proper.  *Adolph v. Fed. Emergency Mgmt. Agency of the United States*, 854 F.2d 732, 735 (5th Cir. 1988) (citations omitted).

Courts in this circuit have "consistently disfavored dismissal under Rule 12(b)(6)."  *Scanlan*, 343 F.3d at 536 (citations omitted).  In deciding whether to grant a motion to dismiss, the district court "must not go outside the pleadings and must accept all well-pleaded facts as true, viewing those facts most favorably to the plaintiff."  *Id.* (citations omitted).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (citation omitted).

## BACKGROUND

According to the Plaintiff, on September 5, 1998, Donald Douglas ("Douglas") contacted

Plaintiff John S. Clark ("Clark") about investing in the oil and gas industry.  Pl. Compl., p. 4, ¶ 19;

RICO Case Statement, p. 10.  Two days later, on September 7, 1998, Clark met with Douglas in

Palestine, Texas.  RICO Case Statement, p. 10.  At the meeting, Douglas represented that as an

officer, director and shareholder of Caddo Creek Production, Inc. ("Caddo Creek"), an oil and gas

business, he had significant experience in the oil and gas industry.  *Id.*  At the conclusion of their

meeting, Clark, individually and as trustee of the John S. and Loretta J. Clark Trust (the "Trust"),

and Douglas entered into the following agreement:

1.   Lockout Corporation ("Lockout") / 21st Century Marketing, Inc. would provide a five well package;

2.   Lockout / 21st Century Marketing, Inc. would operate and market the hydrocarbons at no cost to the Trust;

3.   Funds would not be commingled;

4.   Elvis Clint McBay ("McBay") would transfer 50% of the working interest in the wells to the Trust; and

5.   The Trust would pay $85,000 to Lockout / McBay and Douglas.

*Id.*  On November 24, 1998, Clark wire transferred $85,000 from the Trust to Caddo Creek in

accordance with the agreement.  *Id.*  On January 13, 1999, the Trust paid an additional $30,000 to

Caddo Creek.  *Id.* at 11.

Sometime thereafter, Douglas and McBay proposed a second lease package to Clark,

individually or as the trustee of the Trust.  Douglas and Clark subsequently entered into an oral

agreement which encompassed the following material terms:

1.   The Trust would acquire the surface rights for the Temple-Inland Lease as well as the working interest in the Temple-Inland Lease;

2.   Douglas and Caddo Creek would operate the more than fifteen wells on the Temple-

Inland Lease at their sole expense;

3.     The Trust would obtain the working interests in the T.O. Meaux Lease, the Compass-Moore Lease, the McClinton (South 25 Acres) Lease, the McKinney Lease, the Kalos Lease, the Crawford 5 Lease, the Garrison Lease, and the 9.99% override on the McClinton (South 25 Acres) Lease from T. Johnson, Ltd.;

4.     Douglas and Caddo Creek would operate the existing wells on the T.O. Meaux Lease, the Compass-Moore Lease, the McClinton (South 25 Acres) Lease, the McKinney Lease, the Kalos Lease, the Crawford 5 Lease, the Garrison Lease and the Temple-Inland Lease at their sole expense; and

5.     After the Trust received the return of all of its investment, revenues would be shared equally between the Trust and Douglas / Caddo Creek.

RICO Case Statement, pp. 11-14.

In furtherance of the parties' agreement, Clark, on behalf of the Trust, paid $835,000 to T. Johnson, Ltd. *Id*. at 14. On June 16, 1999, the trustee of T. Johnson, Ltd. delivered a special warranty deed to Clark, granting title to the Trust to the surface rights of the Temple-Inland Lease and assigning to the Trust the T.O. Meaux Lease, the Compass-Moore Lease, the McClinton (South 25 Acres) Lease, the McKinney Lease, the Kalos Lease, the Crawford 5 Lease, the Temple-Inland Lease and the override. *Id*.

In the latter part of 1999, Douglas and McBay informed Clark that all of the leases, with the exception of the Temple-Inland Lease, were "doggy leases" due to plugging liabilities. *Id*. at 15. As such, Douglas and McBay advised Clark to dispose of the leases in order to avoid liability. *Id*. Clark subsequently assigned the T.O. Meaux Lease, the Compass-Moore Lease, the McClinton (South 25 Acres) Lease, the McKinney Lease, the Crawford 5 Lease, the Garrison Lease and the override to Recon. *Id*. at 16. However, prior to recording the assignments, someone allegedly altered the McClinton (South 25 Acres) Lease and override assignments, reflecting T. Johnson Ltd.

-5-

as the grantee. *Id*.  T. Johnson Ltd. subsequently assigned the McClinton (South 25 Acres) Lease and override to McBay.  *Id*.

In May 2001, Douglas, his wife, Cheryl, Caddo Creek, Lyle Brandon and Lana Brandon altered a copy of the June 16, 1999 assignment, naming Caddo Creek, rather than the Trust, as the grantee of the Temple-Inland Lease.  *Id*. at 17.  Then, they transmitted a copy of the altered assignment by commercial interstate carrier to Roger Clark.  *Id*.  Thereafter, Roger Clark purchased an interest in the Temple-Inland Lease for a total of $100,000.  *Id*.

In June 2001, Douglas introduced Clark to Billy M. Knollenberg ("Knollenberg").  *Id*. at 16. Knollenberg is the president of National Equities Holdings, Inc. ("NEHI"), *id*. at 3, as well as the sole owner, director and officer of Virgin America Energy, Inc. ("Virgin") and M P C C, Inc. (MPCC).  *Id*. at 7.

Apparently after meeting Clark, Knollenberg entered into an agreement with Douglas and McBay whereby Knollenberg issued five million shares of NEHI common stock to Douglas and McBay in exchange for which Douglas, Caddo Creek, McBay and Lockout would cause interests in the Temple-Inland Lease to be transferred to others at the direction of Knollenberg.  *Id*. at 18.  In accordance with this agreement, Caddo Creek distributed an offering memorandum with respect to well number 27 on the Temple-Inland Lease.  *Id*.  The memorandum offered six units comprising a 33% working interest in well number 27 at a cost of $11,667 per unit.  *Id*.

On July 8, 2002, John E. Whalen paid $11,667 to Caddo Creek as an investment in production from the Temple-Inland Lease.  *Id*. at 18-19.  Likewise, on July 12, 2002, William L. Dieringer paid $11,667 to NEHI as an investment in production from the Temple-Inland Lease.  *Id*. at 23.

-6-

Thereafter, on July 24, 2002, Lockout distributed an offering memorandum with respect to well number 27 on the Temple-Inland Lease. *Id.* at 23. The memorandum offered six units comprising a 33% working interest in well number 27 at a cost of $11,667 per unit. *Id.* at 24. On August 15, 2002, Kenneth F. Schwenke paid $11,667 as an investment in production from the Temple-Inland Lease. *Id.* In October 2002, Ronald G. Taylor paid $30,000 to Lockout as an investment in production from the Temple-Inland Lease. *Id.*

In October 2002, Knollenberg, on behalf of NEHI, offered to purchase from Clark the Trust's interest in the Temple-Inland Lease. *Id.* at 8. Clark, on behalf of the Trust, rejected the offer. *Id.*

Thereafter, however, McBay and Knollenberg arranged for NEHI, Virgin and MPCC to form limited partnerships for the purpose of drilling wells on the Temple-Inland Lease. *Id.* at 24. From December 2002 until April 2003, Scott Whitten, Ronald Taylor, James Dusek and Stanley Larson (individually and on behalf of the Stanley Larson Revocable Trust) invested in the limited partnerships. *Id.* at 24-25.

On April 8, 2004, NEHI, Virgin and MPCC filed a lawsuit against the Trust and Clark, both individually and as trustee of the Trust, in the 349th Judicial District Court of Anderson County, Texas for breach of contract, quantum meruit and promissory estoppel. *Id.* at 4. On July 5, 2005, NEHI, Virgin and MPCC filed a second amended petition, joining McBay and Lockout as defendants in the lawsuit.

On July 18, 2005, Clark filed the instant action, seeking damages for RICO violations, common law fraud and conversion. Clark is also seeking an accounting. On July 26, 2005, Defendants Lockout and McBay moved to dismiss Clark's lawsuit, alleging that Clark failed to state a cause of action upon which relief could be granted. The Defendants argue that Clark failed to set

forth facts sufficient to support a RICO claim.   NEHI, Virgin, MPCC, Knollenberg and Doris Knollenberg subsequently filed a similar motion to dismiss.  The court recognizes that the remaining Defendants (Douglas, Cheryl Walker Douglas, Caddo Creek, Lyle Brandon and Lana Brandon) have not moved for a dismissal.   However, since a district court may dismiss a complaint on its own motion for failure to state a claim, the court will likewise examine whether Clark failed to state a claim against the remaining Defendants as well.  *See Skidmore Energy, Inc. v. KPMG*, 2004 WL 3019097, *5 (N.D. Tex. 2004).

**DISCUSSION AND ANALYSIS**

Clark has alleged RICO violations under 18 U.S.C. § 1962(a), (b) and (c).[1]  "Reduced to their simplest terms, these subsections state that:

> (a)    a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;
>
> (b)    a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering activity; [and]
>
> (c)    a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity[.]"[2]

*Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995).

"A RICO 'person' is 'any individual or entity capable of holding a legal or beneficial interest in property.'" *Whelan v. Winchester Production Co.*, 319 F.3d 225, 229 n. 3 (5th Cir. 2003), quoting 18 U.S.C. § 1961(3).  "A 'pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred

---

[1]In his RICO Case Statement, Clark included a violation of 18 U.S.C. § 1962(d) as well.

[2]"(d)    a person cannot conspire to violate subsections (a), (b), or (c)." *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995).

within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.'" *Id.* at n. 4, quoting 18 U.S.C. § 1961(5). "'Racketeering activity' includes acts indictable under 18 U.S.C. § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud)." *Id.* at n. 5, citing 18 U.S.C. § 1961(1)(B).[3]

Common elements are present in all of the RICO subsections.  *Crowe*, 43 F.3d at 204. "These common elements teach that any RICO claim necessitates '1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*.'" *Id.*, quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988); *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989)(emphasis in original).  The Defendants assert that Clark's RICO claims fail as a matter of law because Clark failed to sufficiently plead the existence of a RICO enterprise.  The court agrees.  Accordingly, the court's analysis will focus solely on the enterprise element.

"A plaintiff asserting a RICO claim must allege the existence of an enterprise." *Crowe*, 43 F.3d at 204 (citation omitted).  "A RICO enterprise can be either a legal entity or an association-in-fact." *Id.* (citation omitted).  Here, Clark has alleged an association-in-fact enterprise consisting of NEHI, Knollenberg, Douglas, Virgin, MPCC, Caddo Creek, Lockout, McBay, Lyle Brandon and Lana Brandon.  Pl. Compl., p. 30, ¶¶ 156-157.[4]

In order to establish an association-in-fact enterprise, a plaintiff must demonstrate "'evidence

---

[3]In his complaint, Clark alleges that the Defendants engaged in numerous acts of mail fraud and wire fraud.  In his RICO Case Statement, he expanded the acts to include financial institution fraud and interstate transportation of stolen property.

[4]In his RICO Case Statement, Clark expanded the RICO association-in-fact enterprise to include Doris Knollenberg and Cheryl Douglas as well.  RICO Case Statement, p. 50.

of an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit.'" *Crowe*, 43 F.3d at 205 (citations omitted).  "This formulation of an association-in-fact enterprise incorporates the notion of continuity." *Id.* (citation omitted).[5] Accordingly, an "'association-in-fact enterprise 1) must have an existence separate and apart from the pattern of racketeering, 2) must be an ongoing organization and 3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure.'" *Id.* (citations omitted).

First, Clark has failed to allege that the enterprise exists separate and apart from the pattern of racketeering.  Clark was required to plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts.  *See Troyer v. Boomtown, LLC*, 2004 WL 2984364, *8 (E.D. La. 2004) (citation omitted).  In his RICO case statement, Clark provided the court with the following:

> The "enterprise" is separate from the pattern of racketeering activity, and the pattern and the "enterprise" have not merged.

RICO Case Statement, p. 52.

> The "enterprise" itself was to and did engage in no legitimate business.  The "enterprise" came into being only for the purpose of engaging in fraudulent activity, *i.e.*, "scamming" those who might wish or be convinced to engage in the oil and gas business and other speculative investments.  Although [all of the Defendants] presumably all engage in legitimate activities – some related to the oil business – apart from the "enterprise," when the "enterprise" itself did and do goes [sic] about its intended activities, it engaged only in nefarious activities, albeit all were not "racketeering activities," as defined by 18 U.S.C. § 1961(1) and albeit all were not directed toward Clark and / or the Clark Trust.

---

[5] "'Continuity' can be either 'close-ended' or 'open-ended.'  This refers to either 'a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" *Goldin, Peiser & Peiser, L.L.P. v. Delta Brands, Inc.*, 2002 WL 550450, *2 (N.D. Tex. 2002)(citations omitted).

RICO Case Statement, p. 53.

Aside from Clark's conclusory allegation that the association-in-fact enterprise exists separate and apart from the pattern of racketeering, Clark failed to specifically plead facts showing that the association exists for purposes other than simply to commit the predicate acts.  Furthermore, "[i]f the association has as its *raison d'etre* a single, discrete goal toward which all its energies are directed, the association is not a RICO enterprise."  *Troyer*, 2004 WL 2984364 at *8 (citation omitted).  Here, Clark specifically alleged that the enterprise's sole, discrete goal is to engage in the fraudulent activity of "scamming" those who might be interested in engaging in the oil and gas industry.  Hence, Clark failed to establish that this enterprise exists as an entity separate and apart from the pattern of illegal activity.  *See id.*

Further, Clark has failed to establish that the enterprise's members function as a continuing unit as shown by a hierarchical or consensual decision making structure.  More specifically, Clark provided the court with the following in his RICO case statement:

> The structure of the "enterprise" is not yet clearly known.  At various times Elvis Clint McBay clearly exercised control over the operation of the "enterprise."  At other times Donald ("Donnie") Douglas clearly controlled at least that portion of the "enterprise" that included Caddo Creek Production, Inc., Cheryl Walker Douglas, Lyle J. Brandon and Lana Roberts Brandon.  At one point Billy M. Knollenberg directed the activities of Caddo Creek Production, Inc., Donald ("Donnie") Douglas, Cheryl Walker Douglas, Lyle J. Brandon and Lana Roberts Brandon with respect to the John E. Whalen transaction.  At other times it appears that Billy M. Knollenberg had functional control over the marketing of preproduction sales and of limited partnership interests.  In connection with the acquisition of the various leases, the packaging of the leases for sale to Clark and the Clark Trust, the reconveyance of the leases other than the Temple-Inland Lease and the transfer of the McClinton (South 25 Acres) Lease and the "override" to Elvis Clint McBay, Elvis Clint McBay seems to have been in control.  With respect to operation of the Temple-Inland Lease, to misappropriation of oil from the Temple-Inland Lease and the fraudulent accounting, to use of drilling rigs and other equipment without payment of rental and to leasing of surface rights for hunting, Elvis Clint McBay was in control.

-11-

RICO Case Statement, pp. 50-51.

As shown, Clark failed to allege that the enterprise operates with a unified decision-making structure.  *See Skidmore Energy, Inc.*, 2004 WL 3019097 at *10.  Clark failed to show that the enterprise even has a structure.  Accordingly, Clark failed to establish that the members of this enterprise function as a continuing unit.

The court concludes that Clark failed to satisfy the first and third elements of an association-in-fact enterprise; therefore, the court finds that there is no enterprise.  *See Troyer*, 2004 WL 2984364 at *8.  Since Clark failed to allege the existence of an enterprise as required to maintain a RICO claim, Clark's RICO claims against all of the Defendants must fail as a matter of law.  *See Skidmore Energy, Inc.*, 2004 WL 3019097 at *10.

## CONCLUSION

Based on the foregoing, the court **ORDERS** that Defendants Lockout Corporation and Elvis Clint McBay's motion to dismiss (docket entry #9), Defendants National Equities Holdings, Inc., Billy M. Knollenberg, Doris A. Knollenberg, Virgin America Energy, Inc. and M P C C, Inc.'s motion to dismiss pursuant to FRCP Rule 12 and the abstention doctrine (docket entry #41) and Defendants Lockout Corporation and Clint McBay's supplemental motion to dismiss and brief in support thereof (docket entry #48) are **GRANTED**.  Clark's RICO claims against all of the Defendants are **DISMISSED WITH PREJUDICE**.

This court declines to exercise supplemental jurisdiction over the remaining state law claims now that the federal claims have been dismissed.  28 U.S.C. § 1367(c)(3).  It is therefore ordered that the remaining state law claims are hereby **DISMISSED WITHOUT PREJUDICE** to the refiling of the same in the appropriate state court.  *See Robertson v. Neuromedical Center*, 161 F.3d 292, 296

(5th Cir. 1998) (". . . if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well); *Reese v. Anderson*, 926 F.2d 494, 501 n. 9 (5th Cir. 1991) ("[s]uch dismissal is perhaps the practice in this circuit . . .).

**SIGNED this the 10th day of February, 2006.**

_Richard A. Schell_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE